Dwight WHETSTONE, Appellant

v.

R.S. ELLERS, Dir. M.H.C. Serv. (Pa. Doc.); Dr. Stanley Stanish; Stanley Bohinski, M. Dir.; Patricia Ginocchetti, C.H.C.H.; Evelyn Smith, R.N.; James Wynder, S. SCID R; Edgar Kneiss, D.S. SCID R.

No. 11–1518.

United States Court of Appeals, Third Circuit.

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary Action

Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6 Sept. 22, 2011.

Opinion filed: Oct. 5, 2011.

Dwight Whetstone, Dallas, PA, pro se.

Maria Macus–Bryan, Esq., Pennsylvania Department of Corrections Office of Chief Counsel, Mechanicsburg, PA, Alan S. Gold, Esq., Gold & Ferrante, Jenkintown, PA, for Appellees.

Before: SLOVITER, JORDAN and GREENAWAY, JR., Circuit Judges.

OPINION

PER CURIAM.

Inmate Dwight Whetstone was badly injured after attempting to bench-press a substantial amount of weight in the prison gym. As was eventually discovered, Whetstone's left pectoral had completely separated from a prominent shoulder muscle and, as a result, the shoulder muscle had rolled down into Whetstone's chest area. Whetstone sued several administrators and medical personnel employed at or associated with SCI–Dallas—his place of confinement—principally claiming that they were deliberately indifferent to his medical needs related to the weightlifting

injury. The District Court granted the motion to dismiss of several defendants, and granted summary judgment in favor of the remaining defendants. We will summarily affirm.

According to his hundred-page complaint (including attachments), brought pursuant to 42 U.S.C. § 1983, Whetstone immediately went to the prison infirmary after the injury occurred, where he was given "ice with iodine" and had his blood pressure taken by defendant Evelyn Smith, a Registered Nurse. Nurse Smith then contacted defendant Dr. Stanley Bohinski, the prison's Medical Director, and she informed him of Whetstone's injury and high blood pressure. Dr. Bohinski "prescribed a pill to get the pressure down," "ordered overnight observation," and attended to Whetstone the following day. Dr. Bohinski ordered an x-ray of Whetstone's left shoulder and chest area.

Two days after the injury, Whetstone was seen by defendant Dr. Stanley Stanish, the Regional Health Director for prisoner health services. Dr. Stanish "gave [Whetstone] several dosages of non-aspirin." Still in pain the next day, Whetstone returned to the prison infirmary, where he "was told to sign up for sick call." Six days later (nine days after the injury occurred), Whetstone "was taken to Kingston, Pa., for an orthopedic consultation" and was told that he "was in great need of a corrective surgery." The following week the results of Whetstone's x-ray were in. Twelve days later Whetstone "was taken to Wilkes–Barre Imaging Center for an M.R.I." The following week Whetstone was prescribed 500 milligrams of Acetaminophen, and he was given additional pain-relievers over the course of the next two months.

Fourteen weeks after his injury occurred, Whetstone underwent surgery to repair the muscle damage. Complaining of "lumpage [sic] in his chest" one month later, Whetstone sought assistance from prison medical staff, including Dr. Stanish, who "concurred [that] surgery was not successful." Whetstone received "another chest exam," and was eventually told by Dr. Bohinski that a second surgery would not be performed. Whetstone instead was prescribed an alternative treatment plan of physical therapy. Whetstone found that he "was unable to do even the bare minimum of movement" during the physical therapy sessions.

Whetstone believes that the medical care he received was insufficient and that it was provided in an untimely fashion. In particular, Whetstone alleges that the failure to provide him with a second surgery was cruel and unusual punishment, and possibly discrimination against him based on the fact that Whetstone is serving a life sentence. Whetstone challenged his medical care using the inmate grievance system, but he was ultimately unsuccessful. He then filed this suit.

By order entered September 24, 2009, the District Court: denied without prejudice Whetstone's motions for appointment of counsel; granted the motion to dismiss of defendants Dr. R.S. Ellers, James Wynder, Edgar Kneiss, and Patricia Ginocchetti; denied the motions to dismiss of Dr. Stanish, Dr. Bohinski, and Nurse Smith; and ordered those three to answer Whetstone's complaint. In its opinion the District Court reasoned that Whetstone failed to state a claim against Dr. Ellers because he failed "to plead with particularity the conduct, time, and place that provides the base for [his] claim." The District Court noted that "Dr. Ellers' position as Director of the Bureau of Health Care Services is not enough personal involvement to sustain a cause of action." As for the non-

medical defendants (Wynder, Kneiss and Ginocchetti), the District Court similarly determined that Whetstone had failed to state a claim because he "allege[d] no fact that could plausibly form a claim of liability" against those defendants. The District Court also determined that Whetstone's complaint "fails to state an Equal Protection claim based upon his status as a 'lifer' because he fails to allege that (1) non-lifers who received surgery or other medical care were similarly situated to Whetstone and (2) there was no rational basis to support SCI–Dal las's decision to deny the second surgery."

After a period of discovery conducted under the supervision of a Magistrate Judge, Drs. Stanish and Bohinski, and separately Nurse Smith, moved for summary judgment. By order entered January 31, 2011, the District Court adopted the recommendation of the Magistrate Judge that the motions for summary judgment be granted. The District Court agreed with the Magistrate Judge that Nurse Smith and Drs. Stanish and Bohinski were entitled to judgment as a matter of law on Whetstone's Eighth Amendment medical neglect claim. In particular, the District Court noted that Whetstone "has received continuous care since injuring himself in a weightlifting accident. He has been examined by numerous medical professionals, received medications, MRI scans, consultations, physical therapy, and has even had surgery all in an effort to remedy his injury." And noting that Whetstone's claims against Drs. Bohinski and Stanish were premised on a dissatisfaction with the course of treatment prescribed, the District Court cited *Brown v. Borough of Chambersburg*, 903 F.2d 274 (3d Cir.1990), for the proposition that "the exercise by a doctor of his professional judgment is never deliberate indifference" to an inmate's medical needs. *See id.* at 278 ("While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"). Whetstone timely appealed.

We have jurisdiction under 28 U.S.C. § 1291, and our review is plenary. *See Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir.2010) (plenary review of orders granting summary judgment); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir.2010) (plenary review of order granting motions under Fed.R.Civ.P. 12(b)(6)). We may summarily affirm a district court judgment if the appeal fails to present a substantial question. *See* LAR 27.4; I.O.P. 10.6.

An inmate's constitutional right to adequate medical care is violated if his serious medical need is met with deliberate indifference from prison officials. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir.2003). An inmate's allegations of medical malpractice or negligence are insufficient to meet that standard, as are "mere disagreements" concerning the proper course of treatment. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.2004); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987). A prison official can rebut a prima facie demonstration of deliberate indifference by establishing that, having learned of the inmate's serious medical need, reasonable steps were taken to prevent further harm to the inmate's health or safety. *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir.2001).

For substantially the reasons given in the District Court's September 24, 2009

and January 31, 2011 opinions, we will summarily affirm the judgment of the District Court. That Whetstone's injury constitutes a "serious medical need" is not debated. *See Lanzaro*, 834 F.2d at 347 ("A medical need is serious,' . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention") (citations omitted). But whether the conduct of the defendants in this case is susceptible to a deliberate indifference characterization—and we conclude that it is not—fails to present a substantial question. *Cf. Durmer v. O'Carroll, M.D.*, 991 F.2d 64, 68 (3d Cir.1993) (noting that deliberate indifference may exist where "prison authorities prevent an inmate from receiving recommended treatment," or "where knowledge of the need for medical care [is accompanied by the] intentional refusal to provide that care"). In addition, there is no factual basis in the record to support Whetstone's equal protection claim. Finally, we agree with the District Court that Whetstone failed to state a claim against Wynder, Kneiss, Ginocchetti, and Dr. Ellers. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").